**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Sobelmar Antwerp N.V. | Case No. 15-20423 |
| Sobelmar Shipping N.V. | Case No. 15-20424 |
| SBM-1 Inc. | Case No. 15-20425 |
| SBM-2 Inc. | Case No. 15-20426 |
| SBM-3 Inc. | Case No. 15-20427 |
| SBM-4 Inc. | Case No. 15-20428 |
| Debtors. | (Joint Administration Pending) |

**DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING**
**THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE**
**PROTECTION FOR USE THEREOF, AND (III) SCHEDULING FINAL HEARING**

Sobelmar Antwerp N.V. ("Sobelmar Antwerp") and certain of its affiliates, as debtors and debtors in possession in the above captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order (i) authorizing the Debtors to use cash collateral of existing secured lenders, (ii) granting adequate protection for the use thereof, and (iii) scheduling a final hearing. In support thereof, the Debtors would show as follows:

**I. JURISDICTION AND VENUE**

1. This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157. Venue of these chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion are Bankruptcy Code §§ 105, 361, 362, 363 and Bankruptcy Rules 2002, 4001, and 9014.

## II.  RULE 4001 STATEMENT

2. By this Motion the Debtors seek authority to use the Cash Collateral (as defined below) in which HSH Nordbank AG ("HSH") may assert an interest. The Debtors seek to use such Cash Collateral as working capital in the operation of their business for the purposes specified in, and at least for the period defined in, the attached budget.

3. The Debtors intend to provide adequate protection, to the extent of the aggregate decrease in value of Cash Collateral from and after the Petition Date (as defined below) and to the extent of HSH's interest therein, by: (i) maintaining the value of HSH's asserted interest in the Cash Collateral by continuing to operate the business and thereby generating new cash; (ii) granting HSH postpetition replacement liens pursuant to Bankruptcy Code § 361(2) in accounts receivable, including cash generated or received by the Debtors subsequent to the Petition Date, but only to the extent that the HSH had valid, perfected prepetition liens and security interests in such collateral as of the Petition Date; and (iii) providing HSH a superpriority claim pursuant to Bankruptcy Code § 507(b) over all administrative expense claims and unsecured claims, of any kind or nature whatsoever, whether in existence on or arising after the Petition Date subject to the Carve-Out (as defined below).

## III.  BACKGROUND

**Business Description**

4. On March 17, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut, Hartford Division (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as debtors-in-possession. No trustees or examiners have been appointed in these cases. No official committee of unsecured creditors has been appointed in these chapter 11 cases.

5. Sobelmar Antwerp, a Belgium corporation, together with its Debtor and non-debtor subsidiaries, provides worldwide seaborne transportation services, operating a fleet of four handysize bulk carriers (the "Vessels"). Each Vessel is held by an individual ship owning company (each a "Vessel Owner"), which is a common corporate structure in the industry. Sobelmar Antwerp owns the Vessel Owners – Debtors SBM-1 Inc. ("SBM1"), SBM-2 Inc. ("SBM2"), SBM-3 Inc. ("SBM3"), and SBM-4 Inc. ("SBM4"), all of which are Marshall Islands corporations – through its subsidiary, Debtor Sobelmar Shipping N.V. ("Sobelmar Shipping"), a Belgian corporation.

6. "Handysize" refers to a dry bulk vessel with deadweight tonnage (dwt) typically between 15,000 and 40,000 metric ton (a metric ton is about 2,240 pounds). Handysize is the most common dry bulk vessel and the flexibility of its design enables it to enter smaller ports, including ports that do not have their own cargo handling systems because the vessel itself is appropriately "geared" for loading and unloading cargo. The Debtors' Vessels range in size from 32,778 dwt to 35,315 dwt, and are between five and six years old. The Vessels are flagged either in Belgium or the Marshall Islands, and are generally attractive to the market due to, among other things, their fuel efficiency.

7. As is typical in the industry for liability and insurance reasons, among others, each Vessel Owner is a single-purpose entity that charters its Vessel to an affiliate, in this case Sobelmar Shipping. Sobelmar Shipping then generates revenues by employing the Vessels on time charters and voyage charters with third parties in the maritime transportation market. Sobelmar Antwerp provides technical, commercial, and operational management of the Vessels on market terms. There is also a non-debtor affiliate entity that employs three technical superintendents who provide technical management support.

3

8.     Additional factual background regarding the Debtors, including their current and historical business operations and the events precipitating these chapter 11 filings, is set forth in detail in the Declaration of Vladimir Terechtchenko filed contemporaneously with this Motion (the "Terechtchenko Declaration"), and is incorporated herein by reference.

**Description of Secured Bank Debt**

9.     As described in more detail in the Terechtchenko Declaration, the Debtors SBM1, SBM2, and SBM3 are the borrowers pursuant to that certain Loan and Guaranty Facility Agreement with HSH, as lender, dated June 25, 2007, with a total outstanding principal amount of $41,625,000 ("HSH Facility 1").

10.    The Debtor SBM4 is the borrower under that certain Loan and Guaranty Facility Agreement with HSH, as lender, dated December 20, 2007, with a total outstanding principal amount of $14,000,000 ("HSH Facility 2" and collectively with HSH Facility A, the "HSH Facilities").

11.    HSH Facility 1 financed the construction and acquisition of the vessels *Brasschaat*, *Vyritsa*, and *Kovdor*, which are owned by Debtors SBM1, SBM2, and SBM3, respectively. HSH Facility 2 financed the construction and acquisition of the vessel *Zarachensk*, which is owned by Debtor SBM4.

12.    Debtors Sobelmar Antwerp and Sobelmar Shipping guaranteed the HSH Facilities. The HSH Facilities are cross-collateralized, and are secured by, among other things, first priority mortgages on each of the Vessels. The HSH Facilities are further secured by, among other things (i) assignments of earnings by the Vessel Owners, (ii) assignments of insurance by the Vessel Owners, Sobelmar Antwerp and Sobelmar Shipping; (iii) pledges of the Debtors'

4

deposit accounts held at HSH; and (iv) a cash deposit with an original balance of $1,000,000. All alleged collateral securing the HSH Facilities is referred to herein as the "Prepetition Collateral."

13. The revenues from chartering of the *Brasschaat*, the *Vyritsa* and the *Kovdor* are currently received into an account with a bank other than HSH as to which HSH does not have a pledge. The revenues from chartering the *Zarachensk* are currently deposited into an HSH account.

### IV. RELIEF REQUESTED

14. As a consequence of the prepetition secured financing described above, certain cash in the Debtors' possession or in which the Debtors have an interest on and after the Petition Date may constitute cash collateral ("Cash Collateral") in which HSH may assert an interest within the meaning of Bankruptcy Code § 363(a). By this Motion, pursuant to Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, the Debtors request that the Court enter an order (i) approving the Debtors' use of Cash Collateral, (ii) providing adequate protection for, and to the extent of, any "decrease in the value" of HSH's interest in the Cash Collateral (within the meaning of Bankruptcy Code § 361) if any, and (iii) scheduling a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this Motion.

15. The Debtors do not concede that the "Cash Collateral" is, in fact, "cash collateral" of HSH within the meaning of Bankruptcy Code § 363. Accordingly, all of the relief requested in this Motion, and all of the proposed forms of adequate protection, are subject to an ultimate determination by the Court as to whether the Cash Collateral is actually "cash collateral" entitled to adequate protection for its use.

## V.  BASIS FOR RELIEF

16. Under Bankruptcy Code § 363(c)(2), a debtor may use cash collateral if each entity that has an interest in such cash collateral consents or if the Court, after notice and a hearing, authorizes the use of the cash collateral. Pursuant to Bankruptcy Code § 363(c)(3), the Court must condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.

17. Bankruptcy Rule 4001(b) and (d) govern the procedure for consideration of motions to use cash collateral, and both of these subsections provide for expedited consideration of such motions for cases in which immediate interim relief may be crucial to the success of a reorganization.

18. At a hearing on a debtor's motion for the use of cash collateral, the debtor bears the burden of proof on the issue of adequate protection, and the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien.

19. As of the Petition Date, the Debtors do not have unencumbered cash sufficient to fund all of their business operations and pay present operating expenses. Notably, and as described in further detail in the Terechtchenko Declaration, HSH currently approves and releases all electronic funds transfer requests in connection with certain of the Debtors' bank accounts. Recently, HSH has refused to approve and release electronic funds transfer requests the Debtors initiated to pay crew wages in a timely manner, imperiling the Debtors' businesses and Vessel safety, jeopardizing the Vessels' insurance coverage, and potentially breaching applicable laws as to employee payments. Unless the Court grants the relief requested, the Debtors will be unable to meet basic operating expenses, which will further imperil the survival

of their business. Therefore, the Debtors have an urgent need for the immediate use of Cash Collateral pending a final hearing on this Motion.

20. The operation of the Debtors' vessels is capital intensive, and any lapse in operation, no matter how transitory, could have a substantial adverse effect on the going concern value of the Debtors' business. For example, the Debtors incur ongoing operating expenses related to navigating vessels, which costs include crew costs, provisions, deck and engine stores, lubricating oils, insurance, maintenance and repairs, fuel (termed "bunkers" in the industry), port expenses, etc. Absent the use of Cash Collateral, these expenses cannot be met and the sole income producing assets of the Debtor – the Vessels – will be unable to operate and could possibly be subject to maritime liens and the threat of arrest in international ports. Furthermore, three of the four Vessels are employed under time charters with third parties at favorable rates. Any hindrance of the Vessels' capability of performing their duties to the contractual satisfaction of the third party charterers may lead to the Vessels' unemployment or employment at considerably lower rates with other third party charterers.

21. Accordingly, the Debtors face "immediate and irreparable harm to the estate" absent the emergency consideration of the relief requested in this motion. The immediate use is necessary, and it will stabilize the Debtors' operations and revenue by paying ordinary, postpetition operating expenses, as well as any court approved prepetition expenses that may be at issue. Without authority to use Cash Collateral, the Debtors will not be able to function as a going concern, and will not be able to proceed to consideration of a plan of reorganization. Accordingly, authority to use Cash Collateral is necessary to avoid the shutdown of the Debtors' businesses, and will be in the best interests of the Debtors and their estates, as well of those of their creditors.

22. Through this Motion, the Debtors intend to provide adequate protection, to the extent of the aggregate diminution in value of Cash Collateral from and after the Petition Date to the extent of HSH's interest therein, by:

(a) maintaining the going concern value of HSH's alleged collateral by using the Cash Collateral to continue to operate the business and administer these cases, including using Cash Collateral to pay certain claims that, if left outstanding, could be used to obtain maritime claim liens encumbering the Vessels;

(b) providing HSH a postpetition replacement lien pursuant to Bankruptcy Code § 361(2) in the accounts receivable of the Debtors including cash generated or received by such Debtors subsequent to the Petition Date, subject to the Carve-Out (as defined in the attached proposed order). The validity and priority of any postpetition replacement liens granted to HSH shall be the same as existed as of the Petition Date; and

(c) providing to HSH a superpriority claim pursuant to Bankruptcy Code § 507(b) over all administrative expense claims and unsecured claims, of any kind or nature whatsoever, whether in existence on or arising after the Petition Date, against the Debtors, or their respective estates, subject only to the Carve-Out.

23. The Debtors believe that HSH is adequately protected for the use of any Cash Collateral in which it has an interest.

24. The continuation of the Debtors' operations presents the best opportunity for HSH to receive the greatest recovery on account of its claims. Accordingly, the Debtors submit that use of the Cash Collateral will allow the Debtors to continue their operations and thereby protect HSH's interests to the extent of the validity and priority of the same. Courts have consistently recognized that the preservation of the going concern value of secured lenders' collateral constitutes adequate protection of such creditors' interest in the collateral. *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716-17 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate profitably postpetition, then the secured creditor is adequately protected); *In re 499 W. Warren St. Assocs., Ltd. P'ship,* 142

B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); *In re Stein,* 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the debtors' business).

25. Additionally, through this Motion, the Debtors intend to provide further adequate protection, to the extent of any diminution in value, for the use of the Cash Collateral by providing HSH postpetition replacement liens pursuant to 11 U.S.C. § 361(2) in accounts receivable, including cash generated or received by the Debtors subsequent to the Petition Date, but only to the extent that the HSH had valid, perfected prepetition liens and security interests in such collateral as of the Petition Date. The priority of any postpetition replacement liens granted to HSH shall be the same as existed as of the Petition Date.

## VI. REQUEST FOR INTERIM AND FINAL RELIEF

26. An immediate need exists for the Debtors to obtain approval of the use of Cash Collateral in order to meet key expenses as described above and as identified in the interim budget ("Interim Budget") attached hereto as **Exhibit A.**[1] Without the immediate use of the Cash Collateral for an interim period, the Debtors may be forced to call their vessels to port, close their business, and risk arrest and fire sales of their Vessels. Obviously this would have a severe negative impact upon the Debtors' going concern value and ability to successfully create value for all creditors. The Debtors' business, as a going concern, has a value far in excess of any value that might be obtained in a chapter 7 liquidation. A complete shutdown of the Debtors' business,

---

[1] The Interim Budget reflects weekly cash reserve amounts for certain items that are paid less frequently. To accommodate the cash reserve structure, the proposed Interim Order provides that unspent amounts may be carried forward and spent in later weeks.

even for a short period, could also result in the loss of employees, and creditors and equity receiving substantially less from the enterprise than going concern value. Accordingly, it is imperative that a preliminary hearing be set as soon as possible.

27. Pursuant to Bankruptcy Rule 4001, the Debtors request that the Court set a preliminary hearing on the use of Cash Collateral, and that at such preliminary hearing, the Court authorize the temporary use of Cash Collateral consistent with the Interim Budget, in order to avoid immediate and irreparable harm to these bankruptcy estates pending a final hearing.

28. The Debtors' also request a final hearing as soon as the Court's schedule permits, following 14 days after service of this Motion.

### VII.  NOTICE

1. No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. The Debtors have provided notice of this motion to: (a) the Office of the United States Trustee for Region 2; (b) the entities listed on the Consolidated List of Creditors Holding 20 Largest Unsecured Claims; and (c) the Debtors' prepetition secured lenders. The Debtors respectfully submit that no other or further notice need be provided.

WHEREFORE, premises considered, the Debtors request that this Court enter an Order, in substantially the form attached hereto as **Exhibit B**, authorizing the Debtors to use Cash Collateral as described herein, setting the Motion for a final hearing, and granting such other and further relief as the Court may deem just and proper.

        Respectfully submitted,

        **BRACEWELL & GIULIANI LLP**

| | |
|---|---|
| Hartford, CT | */s/ Evan D. Flaschen* |
| Dated: March 17, 2015 | Evan D. Flaschen ct10660 |
| | Katherine L. Lindsay ct27971 |
| | BRACEWELL & GIULIANI LLP |
| | Evan.Flaschen@bgllp.com |
| | Kate.Lindsay@bgllp.com |
| | CityPlace I |
| | 185 Asylum Street, 34th Floor |
| | Hartford, CT 06103 |
| | Telephone: (860) 947-9000 |
| | Facsimile: (800) 404-3970 |

        *Proposed Counsel for the Debtors*
        *and Debtors in Possession*