**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re:<br>    Sobelmar Antwerp N.V., et al.[1]<br><br>    Debtors. | Chapter 11<br>Jointly Administered Under<br>Case No. 15-20423 (AMN) |
| Sobelmar Antwerp N.V., et al.<br>        Plaintiffs<br><br>vs.<br><br>HSH Nordbank AG<br>        Defendant | Adversary No. _____ |

**DEBTORS' EMERGENCY APPLICATION FOR**
**TEMPORARY RESTRAINING ORDER AGAINST HSH NORDBANK AG AND FOR**
**THE IMPOSITION OF APPROPRIATE SANCTIONS**

The Debtors file this emergency application to restrain HSH Nordbank AG from continuing its actions in violation of this Court's orders and the automatic stay.

**RELEVANT FACTS**

1. Pursuant to the Repositionings Order (ECF 245), the Debtors agreed and the Court ordered at ¶¶ 1 and 2 to reposition the Kovdor and the Vyritsa.

2. Pursuant to ¶ 5 of the Repositionings Order, the Debtors agreed and the Court ordered that:

> Prior to any stay relief being entered, the Debtors are directed to permit one or more nominee(s) to inspect each of the vessels (and to perform such other tasks as are customary) upon advance presentation of the customary credentials such as a passport copy and letter of indemnity.

---

[1] Case No. 15-20423-Sobelmar Antwerp N.V., Case No, 15-20424-Sobelmar Shipping N.V., Case No. 15-20425-SBM-1 Inc., Case No. 15-20426-SBM-2 Inc., Case No. 15-20427-SBM-3 Inc., Case No. 15-20428-SBM-4 Inc.

-1-

#5144268

3. At yesterday's (March 9) hearing, the Debtors represented that they would make available to HSH copies of the Marshall Islands' certificate of registry for the Kovdor and the Vyritsa.

4. Bankruptcy Code §§ 362(1) & (3) prohibit HSH from taking action against the Debtors, including "any act to obtain possession … or to exercise control over property of the estate."

5. As indicated in the email chain at <u>Exhibit A</u>:

- Bernhard Schulte Shipmanagement (India) Pvt. Ltd., as agent for HSH, contacted directly the Belgian Maritime Inspectorate.

- According to the email sent on March 8 at 16:42 (10:42 CT time) – which was even before yesterday's hearing – Schulte informed the Inspectorate that "we are in process of taking over full management of some Belgium Flag ships." The email states that the email was preceded by a telephonic conference between Schulte and the Inspectorate.

- In connection with such purported take-over, Schulte requested all documents relevant to an "Interim DOC Audit," meaning "Documents of Compliance" confirming that the Debtors were in compliance with the requirements for maintaining the Belgian flag for the relevant vessels.

- A subsequent email – again sent even before yesterday's hearing – stated that this take-over involved not only the Vyritsa but also the Brasschaat and the Zarachensk.

- A further email in the chain states that it attaches all of the following documents (these documents are required by the Inspectorate in order to confirm Schulte's credentials for taking over management):

    1- Company policies, mission and vision statement

    2- Scope and field of application mentioning company's objectives 3- QHSE Management system outline as per Apex Manual

    4- QHSE Objectives and Targets 5- Management commitment 6- Environment Aspect

    7- Hazard Identification and Controls

-2-

#5144268

    8-    Company's Responsibility, Authority and Communication providing the Organogram at the TOP MANAGEMENT level

    9-    Organogram of our Mumbai Office

    10-    Management Review process as defined in the Apex Manual 11- Cypress DOC

    12-    Malta DOC

    13-    Last Annual Management Review Meeting Minutes (in separate mail due to large size).

- All of this in relationship to a "take over of vessels on 15th March."

- As a result of receiving the above documents and subject to review "during the next several days," the Inspectorate confirmed that it would "issue a short term interim DOC, valid up to 2 months, allowing [Schulte] to assume management of the mentioned vessels.

- <u>Fortunately</u>, the Inspectorate sought confirmation from the Debtors that the Debtors had authorized Schulte to take over management of the vessels.

6. Upon information and belief, HSH has undertaken to cause its representatives to perform substantially more than an inspection of the vessels. In the Debtors' view, the representatives on board are performing substantial additional tasks related to a take-over of the vessels.

7. Once a vessel inspection is completed, the inspector is required to depart from the vessel without taking any of the onboard books and records with him/her.

8. As represented in court yesterday, the Debtors are to make available copies of the Kovdor's and Vyritsa's Marshall Islands' Certificates of Registry, which are not part of the public record and which therefore cannot be provided to third parties without prior written consent from the respective party of the Registry (here Debtors). However, copies are available onboard the two vessels. Nevertheless, it appears from <u>Exhibit B</u> that HSH's German counsel has

contacted the Office of the Marshall Islands Registry in Hamburg to obtain such documents directly.

9.  The Debtors are in the process of repositioning the vessels. The Debtors have permitted HSH representatives to board the vessels to perform customary vessel inspections. In addition, as represented in court yesterday, the Debtors are making available copies of the Kovdor's and Vyritsa's Marshall Islands' Certificates of Registry, which are on board the vessels.

10. Based on HSH's conduct, it is apparent that HSH never intended to negotiate a consensual turnover of the vessels, only to stall the Debtors and this Court for as long as necessary to enable HSH in bad faith to conduct a de facto take-over of the vessels. This would violate ¶ 3 of the Repositionings Order, which requested that HSH seek to reach agreement on the MOU. It is one thing not to reach an actual agreement, it is another thing to act completely contrary to even seeking to reach an agreement.

11. Based on HSH's conduct, the Debtors are concerned that HSH does not intend timely to honor its repeated representations and this Court's Order to pay all expenses in connection with the repositionings of the Kovdor and the Vyritsa.

12. Also, upon information and belief, Pola is now considering whether to hold off in making the remaining net charter payments due to the threats from HSH that this Court should order assumption/assignment of the Pola charters and/or damages against Pola.

**APPLICABLE LAW AND ORDERS**

13. Bankruptcy Code §§ 362(1) & (3) prohibit HSH from taking action against the Debtors, including "any act to obtain possession … or to exercise control over property of the estate."

14. The Repositions Order authorizes the Debtors to reposition the Kovdor and the Vyritsa and to permit vessel inspections. The Order does not direct or permit either a take-over of the vessels or any HSH representatives to perform any tasks other than customary vessel inspections.

15. The Debtors represented that they would make available copies of the relevant Certificates of Registry, which are on board the vessels. The Debtors did not agree, nor has this Court authorized, for HSH to contact directly the Marshall Islands Registry.

16. This Court has not issued any other orders, nor have the Debtors agreed, either to turn over the Kovdor and the Vyritsa to HSH or to permit HSH to take any actions – including any action to contact third parties directly – other than to perform customary inspections and pay all expenses in connection with the repositionings.

## RELIEF REQUESTED

17. Due to the immediate and irreparable harm being suffered by the Debtors, the Debtors request that all of the following relief be provided on an emergency basis.

18. The Debtors request that this Court restrain HSH from taking any actions other than as expressly authorized pursuant to the Repositionings Order.

19. The Debtors request that this Court restrain HSH from contacting any third parties, whether to effect a purported take-over of the vessels or to obtain Debtor documents and information.

20. As a result of HSH's actions in violation of the automatic stay and without Court authority, HSH has caused damages to the Debtors. This includes substantial US and German legal fees related both to HSH's actions and to the filing and prosecution of this application, reputational damage with respect to the authorities contacted by HSH, and damages related to the

confusion and uncertainty caused to the Debtor's Masters (meaning the vessels' captains) and crew. The worst thing on a vessel is an unclear situation with regard to the authority over the vessel and competing owners. This uncertainty may jeopardize the life at sea for the crew and the assets for which currently the Debtors have full responsibility. In fact, as indicated in <u>Exhibit C</u>, the ITF (international union for seafarers) has already made demand for payment of all Zarachensk crew wages "not later than tomorrow [i.e. March 10] at noon [Poland time]."

21. The Debtors therefore request that this Court enter sanctions against HSH in the form of payment of damages as determined by this Court.

22. Given the notice from the ITF, the Debtors further request that HSH be required to pay all outstanding crew wages in order to avoid an arrest of the vessels by the ITF, including as early as tomorrow 6:00 a.m. Connecticut time with respect to the Zarachensk.

23. Given HSH's unlawful actions, the Debtors further request that HSH be required to fund in advance all of the expenses that it has been ordered to pay in connection with the vessel repositionings, in order to ensure that, in fact, such expenses will be paid when due.

24. Given HSH's unlawful actions, the Debtors further request that HSH be required to fund in advance the full "Carve-Out" under the cash collateral order (ECF 97).

25. The Debtors agree that, to the extent the funds paid in advance for the repositioning expenses and the Carve-Out exceed the amounts actually needed, the Debtors will refund the excess to HSH.

26. The Debtors also request authority to seek appropriate relief against HSH in Belgium for its agent's false representations to the Inspectorate and its improper contact with the Registry.

#5144268

27. The Debtors also request that this Court enter an order that Pola can rely on to the effect that the Debtors are not required to seek, and the Court will not order, either assumption/assignment of the Pola charters or damages against Pola.

28. The Debtors request such further sanctions and other relief as the Court considers appropriate.

## CONCLUSION

The Debtors have, in good faith, done everything they are required to do pursuant to this Court's orders and everything they should do in the spirit of good faith and cooperation. HSH has, in bad faith, ignored this Court's orders, violated the automatic stay and done nothing in the spirit of good faith and cooperation. HSH even represented to this Court that it had no idea why Pola is redelivering the vessels when, in fact, this is being done directly as a result of HSH's rejection of proposed plan revisions and requirement that the Debtors work with HSH for a consensual turnover. HSH should be stopped and sanctioned.

Respectfully submitted,

**BRACEWELL LLP**

Hartford, CT  
Dated: March 10, 2016

*/s/ Evan D. Flaschen*  
Evan D. Flaschen ct10660  
Katherine L. Lindsay ct27971  
BRACEWELL LLP  
Evan.Flaschen@bracewelllaw.com  
Kate.Lindsay@ bracewelllaw.com  
CityPlace I  
185 Asylum Street, 34th Floor  
Hartford, CT 06103  
Telephone: (860) 947-9000  
Facsimile: (800) 404-3970

*Counsel for the Debtors  
and Debtors in Possession*

#5144268